## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANA M. CONSUGAR,** | : | **No. 3:10cv2084** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for resolution is a discovery dispute between the parties.

Having been briefed, the matter is ripe for disposition.

**Background**

This case arises out of an April 29, 2009 motor vehicle accident involving the

plaintiff, Diana M. Consugar.  Plaintiff suffered severe injuries from the accident.

Defendant Nationwide Insurance Company of America ("Nationwide") insured

plaintiff at the time of the accident.  Plaintiff's policy included an underinsured

motorist ("UIM") provision which provided for coverage of injuries sustained by

plaintiff in an accident where the other driver's insurance policy did not provide

sufficient reimbursement.  The insurance policy carried by the other driver had a

policy limit of $25,000.  Plaintiff received this amount from the third-part insurer, and

then sought additional coverage under the UIM provisions in her policy.

Plaintiff's policy had a UIM coverage limit of $300,000.  Immediately after the

accident occurred, Nationwide opened a UIM claim under plaintiff's policy.  Plaintiff's

attorney provided Nationwide with medical records and other information to help

evaluate the claim.  Nationwide did not make plaintiff an offer, and defendant's

counsel advised plaintiff that the policy did not require Nationwide to arbitrate

plaintiff's UIM claim and that she would have to take Nationwide to court to recover

the amounts owed under the policy.  Plaintiff then filed the instant lawsuit, alleging

both that the policy required Nationwide to provide UIM coverage and that

defendant's denial of UIM coverage was in bad faith.

After Nationwide removed the case to this court and answered the lawsuit,

plaintiff propounded discovery requests.  According to plaintiff, Nationwide refused to

produce several of the documents she requested, including: the claims file related to

her case; the underwriting file pertaining to her case and all documents related to the

underwriting of claims from 2009 to the present; policy manuals, policy statements or

other documents regarding the processing of insurance claims from 2007 to the

present, as well as manuals and other educational materials used to train

Nationwide personnel on claims processing; and information relating to loss reserves

established in plaintiff's case.  Plaintiff's counsel contacted the court about this

dispute and, after a telephone conference, the court ordered the parties to brief the

issue.

**Legal Standard**

This matter involves a discovery dispute.  Defendant refuses to provide

plaintiff with various materials requested in discovery, citing the attorney client

privilege, relevance and other doctrines to justify these actions.  Federal Rule of Civil

Procedure 26(b)(1) governs discovery.  Under this rule, "discovery is not limited to

information which is admissible at trial but instead is allowed 'if the information

sought appears reasonably calculated to lead to the discovery of admissible

evidence.'" Josephs v. Harris Corp., 677 F.2d 985, 991 (3d Cir. 1982) (quoting Fed.

R. Civ. P. 26(b)(1)).  A party refusing to provide discovery on grounds that requests

were "'overly broad, burdensome, oppressive and irrelevant' . . . 'must show

specifically how . . . each interrogatory is not relevant or how each question is overly

broad, burdensome or oppressive.'" Id.  (quoting Roesberg v. Johns-Manville Corp.,

85 F.R.D. 292, 296-97 (E.D. Pa. 1980)).  This is a diversity action arising under

Pennsylvania law, and thus the court will apply Pennsylvania law in determining the

applicability of the attorney-client privilege to the case.  Montgomery County v.

MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999).

**Discussion**

        The court will address each of the areas of materials the plaintiff seeks in turn.

Those areas are: (a) the claims file related to plaintiff's case; (b) information related

to loss reserves, if any, established in connection with plaintiff's case; (c) the

underwriting file pertaining to her case and all documents related to the underwriting

of claims from 2009 to the present; and (d) policy manuals, policy statements, or

other documents regarding the processing of insurance claims for the years 2007 to

present and any changes therein, and the specific manuals, educational materials,

and written instructions used for the training of Nationwide's agents, adjusters, and

other personnel involved in the processing of plaintiff's claim.

### A.  The Claims File

The parties first dispute whether plaintiff should have access to the entire

claims file created by Nationwide for the underlying UIM case.  The defendant

argues that certain documents within the claims file are subject to the attorney-client

privilege and need not be produced.  In response to plaintiff's discovery request,

Nationwide produced the claims file and the electronic "activity logs" produced by

agents in processing the claim.  The defendant did not provide the entire file,

however, as Nationwide contended that some of the documents contained in the file

were protected by the attorney-client privilege.  Nationwide instead redacted those

documents and produced a privilege log, which described the nature of the

documents redacted and the reasons why defendant claimed them to be privileged.

Plaintiffs contend that the entire file should be produced and that the attorney-client

privilege does not apply to any documents in the claims file.

The defendant's claims file is discoverable in a bad-faith case like this one, as

information in that file on defendant's decision to deny the claim is relevant or could

lead to potentially relevant information.  See, e.g., Robertson v. Allstate Ins. Co., No.

CIV. A. 98-4909, 1999 WL 179754 at *3 (E.D. Pa. March 10, 1999.) (finding plaintiff

could discover claims file in bad-faith case, but applying the work-product doctrine to

4

limit plaintiff's attempt to discover "the unredated UIM claim file and all documents associated with the file."); <u>Marshall v. Nationwide Mut. Ins. Co.</u>, No. 93-cv-6998, 1994 WL 263776, at *1 (E.D. Pa. June 7, 1994) ("the court finds ample authority to support a ruling that the claims file or claims log should be disclosed in a bad faith action against the insurance carrier).  Defendant does not appear to dispute that at least some portion of the file may be discovered in an action of this sort.  Defendant turned over a portion of the file, but redacted some on the basis of attorney client privilege.  Courts that have allowed discovery of claims files have, as the defendant suggests, limited such discovery on the basis of attorney-client privilege.  <u>See, e.g.</u> <u>Fidelity and Deposit Co. of Maryland v. McCulloch</u>, 168 F.R.D. 516, 524 (E.D. Pa. 1996) (rejecting the notion that the work-product doctrine does not apply to claims files and concluding that "[i]f Defendants have lingering concerns that information is being wrongfully withheld on attorney-client or work product privilege grounds, they may always file an appropriate motion requesting an *in camera* review of particular documents."); <u>Dombach v. Allstate Ins. Co.</u>, No. Civ. A 98-1652, 1998 WL 633655 at * 1 (E.D. Pa. August 27, 1998) (denying motion to provide entire case file in bad-faith claim because "I cannot find that [plaintiff] has overcome defendant's assertion of privilege" over documents in case file and bad-faith statute does not create an exception to privilege); <u>Provident Life & Acc. Ins. Co. v. Nissenbaum</u>, No. Civ. A. 97-5666, 1998 WL 800323, * 1 (E.D. Pa. November 17, 1998) ("defendants' mere claim of bad faith is not enough to shatter the privilege").

To the extent that plaintiff seeks defendant's entire claims file without any redactions for attorney-client privilege, the court will deny the request.  Defendant has in this case asserted privilege over some documents in the case file and provided a privilege log to cover those redactions.  While defendant may assert privilege over the case file plaintiff may, of course, challenge those assertions through an appropriate motion with the court.  Plaintiff has not done so here, instead focusing on the entire file and arguing that no privilege exists to cover any of the material in the file.  The court cannot make a decision on whether particular documents in the file are subject to privilege; such an assessment would require a motion that describes the particular documents at issue and an *in camera* inspection.  The motion for production will therefore be denied without prejudice to future motions addressing this issue after defendant's inspection of the redacted case file and privilege log.

The defendant largely argues general principals of privilege which the court would apply to any specific claim.  Defendant does make one particular argument for privilege, however.  Defendant argues that all documents and Activity Log entries created after July 15, 2010 were prepared in anticipation of litigation and are thus protected by the work product doctrine.  Defendant argues that on July 14, 2010 Nationwide UIM Claims Representative Chris Martin completed a review of plaintiff's pre-accident medical files.  He discovered that plaintiff suffered from a significant pre-existing knee and neck condition.  Plaintiff underwent surgeries for both

6

conditions yet claimed injuries related to the motor vehicle accident.  After this

evaluation, the claims file was referred to a medical specialist, Patti Cahill for a

recommendation of whether records review was necessary.  Beyond the fact that

defendant asserts such documents are entitled to protection as work product,

defendant also insists that turning over the information would create prejudice.  The

claims in this case include not just bad faith, but an underinsured motorist claim, and

the defendant's valuation of that claim should not be before the jury.  As such, all

information in the file produced after July 14, 2010 was produced in anticipation of

litigation and should not be subject to discovery.

      The court uses federal law to determine whether a work product privilege

applies.  United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir.

1988) ("Unlike the attorney client privilege, the work product privilege is governed,

even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P.

26(b)(3).  The work product privilege protects "the mental impressions, conclusions,

opinions or legal theories of an attorney or other representative of a party concerning

the litigation."  Id. (quoting Fed. R. Civ. P. 26(b)(3)).  "[F]ederal courts have

consistently ruled that the work product doctrine is not inapplicable merely because

the material was prepared by or for a party's insurer or agents of the insurer."  Id.  An

insurer's attorney "may invoke work product protection in favor of documents

prepared by it in anticipation of litigation even though the insurer is not a named

party in an action."  Id.  Still, though the work product doctrine may apply to

documents prepared by an insurer or agents of an insurer, "it is equally clear that Rule 26(b)(3) 'was not intended to protect all insurance claim files from discovery.'" Mattison v. Imbesi, No.  Civ. A. 97-2736, 1998 WL 720061 at *2 (E.D. Pa. Oct. 6, 1998) (quoting Jet Plastica Indus. Inc. v. Goodson Polymers, Inc., No. Civ. A 91-3470, 1992 WL 10474, at *1-*2 (E.D. Pa. Jan. 15, 1992)).  "'An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insureds.'" Id. (quoting Lyvan v. Harleysville Ins. Co., No. Civ. A 93-6145, 1994 WL 533907, at *3 (E.D. Pa. Sept. 29, 1994)).

The defendant's position is that all material inserted into the claims file after July 15, 2010 is subject to the work product protection because on that date the defendant decided that the possibility of litigation was substantial and imminent.  The court rejects this position, since to place all documents created and placed in the file after that date in the category of work product would be to ignore the limitations on work product inherent in the federal rules.  The rule covers "the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."  Fed. R. Civ. P. 26(b)(3).  A determination of whether such material fits in the categories covered by the work product rule requires more than mere categorization by date of filing; the defendant must show that the document actually falls in one of these categories or the protection does not apply.

Indeed, the case that defendant cites for the proposition that all documents produced after July 15, 2010 are subject to work product protection rejects this approach and ordered "the Defendant to produce all the documents at issue for an *in camera* review." Atiyeh v. Liberty Mut. Ins. Co., No. Civ. A. 00-2661, 2000 WL 1796420 at *1 (E.D. Pa. 2000).

The court will therefore order the defendant to include in the privilege log all documents, regardless of the date they were produced, that defendant contends are subject to attorney-client or work product privilege.  The identification of those documents should be sufficiently detailed to allow plaintiff to object to defendant's designations.  If plaintiff objects to the designations, the parties should confer and attempt to reach agreement on whether the document should be produced. If the parties cannot reach an agreement, the plaintiff may file a motion with this court for production of the documents.  The documents shall then be produced for an *in camera* review, at which time the court will determine whether privilege applies.

The court warns the parties, however, that discovery is about developing a record in the case that produces all of the relevant information necessary to insure an outcome fair to all parties.  Litigation is an effort to solve a dispute through an examination of the facts surrounding that dispute, not a competition to see which party can manipulate legal doctrines to gain advantage.  Privileges, even privileges as important as the attorney-client privilege, are an exception to the general requirement that parties produce all potentially relevant information in discovery.

The court will not make this exception to discovery the rule, nor allow either party to make of discovery a motions contest or a game of hide-and-seek.  The court assumes that counsel will only designate documents as privileged when there is a good-faith basis to believe that the material should not be subject to discovery.  A deviation from this standard will not be tolerated.  Counsel should recognize as well that the court takes a very narrow view of the privilege at issue here and should tailor their designations accordingly.

### B.  Reserve Information

Defendant urges the court to prevent discovery of reserve information, arguing that such information is not discoverable in a bad-faith claim.  "An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim."  Peco Energy Co. v. Insurance Co. of North America, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004).  Pennsylvania law "requires insurance companies to set aside reserves upon notice of potential losses under their policies."  Fidelity and Deposit Co. of Maryland v. McColloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996).  Defendant points to several cases which allegedly establish that "reserve information is not discoverable in a subsequent bad faith lawsuit."  See, e.g., Kaufman v. Nationwide Mut. Ins. Co., No. Civ. A. 97-1114, 1997 WL 703175 *1 (E.D. Pa. 1997) ("procedure for setting reserves . . . is confidential information which a court should not order to be disclosed unless the relevance of this information is clear and disclosure is necessary.").  Other courts, however, have found that "reserves, of course, must

have some relationship to the insurer's estimation of the insured's potential liability. Otherwise, the setting aside of reserves would serve little, if any, purpose." North River Ins. Co. v. Greater New York Mut. Ins. Co., 872 F.Supp. 1411, 1412 (E.D. Pa. 1995).  Thus, the amount set aside for reserves "is certainly germane to any analysis [defendant] made of" the claim's value, and of whether defendant acted in bad faith in processing the claim.  Id.; see also, General Elec. Capital Corp. v. DIRECTV, Inc., 184 F.R.D. 32, (D. Conn. 1998) (finding as relevant information on loss reserves that "did 'entail an evaluation . . . based upon a thorough factual . . . consideration.'") (quoting Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 288 (D.D.C. 1986); U.S. Fire Ins. Co. v. Bunge North America, Inc., 244 F.R.D. 638, 645 (D. Kan. 2007) (amount in reserves "could, at the least, lead to admissible evidence relating to the Insurers' own beliefs about coverage and their liability, as well as their good or bad faith in handling and investigating [defendant's] claims.").

The court agrees with the plaintiff that "the amount of reserve, if any, assigned to Ms. Consugar's UIM claim" should be produced.  The amount set aside for reserves provides some evidence of the value assigned by defendant to plaintiff's claim.  Since plaintiff here claims that defendant acted in bad faith, a comparison between the reserve value of the claim and defendant's actions in processing plaintiff's claim could shed light on defendant's potential liability.  The reserve amount is therefore relevant or could potentially lead to relevant information, and the court will order the disclosure of such information.  To the extent that defendant

11

contends that some documents relating to the establishment of reserves are protected by attorney-client or work-product privilege, those claims should be included in the privilege log and will be evaluated by the court if necessary.  The court's statements above on the nature of discovery, the limits on privilege, and the court's desire to make this litigation about discovering the relevant facts in the case and not about motions practice apply to this material as well.

### C. Underwriting Files

Plaintiff also seeks production of the underwriting file pertaining to plaintiff's insurance policy, as well as all documents related to the underwriting of claims from 2009 to present.  She argues that courts have found such information discoverable as it may lead to evidence indicating that plaintiff's claim was denied not on the merits of the claim, but for business considerations.  Defendant does not address the issue of the general underwriting file, but insists that the information on claims other than plaintiff's are not relevant to the case and need not be disclosed.

The court agrees with the plaintiff and will order the defendant to comply with this discovery request.  The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [and] [r]elevant matter need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Defendant does not claim that the files in question are privileged, but simply that they are irrelevant.  The court concludes that requests for files on other

claims, since they could reveal patterns of denials of claims similar to plaintiff's are reasonably calculated to lead to admissible evidence.  As such, the court will order the defendant to comply with the request.

### D.  Policy Manuals

Plaintiff also seeks the policy manuals, policy statements, educational materials or other written instructions used for training Nationwide agents.  Such material, she argues, is relevant to how and why defendant denied plaintiff's claim, and is thus relevant to the bad-faith claim.  Defendant responds that the policy manuals are confidential corporate documents which are not relevant to plaintiff's bad faith claim and turning over the documents would be unduly prejudicial to the plaintiff's UIM claim.  Defendant asserts that the posture of this case, which includes both a bad-faith and a UIM claim, mandates that the court prevent discovery of material that would be unduly prejudicial to the UIM claim, even if that matter is relevant to the bad-faith action.

The court will order that defendant provide the requested material.  As to the relevance of defendant's policies for handling claims, a request for such material is reasonably calculated to lead to material relevant to plaintiff's bad faith claim.  Such material would allow plaintiff to compare defendant's standards for evaluating claims with the conduct of defendant's agents in this matter.  A failure to follow established policy could make it more likely that defendant acted in bad faith in denying plaintiff's UIM claim.  Thus the requested material is discoverable.

Defendant contends, however, that providing the manuals would be unduly prejudicial as the material relates to plaintiff's UIM claim.  Defendant points out that in state court, UIM trials are bifurcated from bad-faith claims, and Pennsylvania courts have ruled that claims manuals need not be made available to plaintiffs until after the conclusion of the UIM case.  Defendant suggests that if the court determines that the claims manuals must be turned over,  to avoid unfair prejudice the court should bifurcate the case and withhold discovery of the manuals until the end of the UIM case.[1]

The court rejects this approach.  The material is relevant to plaintiff's bad faith claim, which is part of the case.  There is no reason to bifurcate this trial.  Federal Rule of Civil Procedure 42 allows a court to "order a separate trial on one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for the sake of "convenience or to avoid prejudice, or to expedite and economize."  FED. R. CIV. P. 42.  This decision to bifurcate is left to the trial court's discretion and is decided on a case-by-case basis.  Idzojtic v. Pennsylvania R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972).  The court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources" in deciding whether to bifurcate the trial.  Emerick v. U.S. Suzuki Motor Corp., 750 F.2d

---

[1]The court notes that defendant removed this case from the Court of Common Pleas of Schuylkill County, Pennsylvania.  (See Doc. 1).  Defendant contends that Pennsylvania law requires bifurcation of UIM and bad-faith claims, while admitting that there is no such requirement in federal court.  Despite this difference in rules, defendant chose to have the case tried in this court and must accept the consequences.

19, 22 (3d Cir. 1984).  The moving party bears the burden of establishing the need to

bifurcate.  See Innovative Office Prod., Inc. v. Spaceco, Inc., No. 05-04037, 2006

WL 1340865 *1 (E.D. Pa. May 15, 2006); 9A WRIGHT & MILLER, FED. PRAC. AND

PROC. CIV. 2D § 2388.  If a verdict for the defendant on plaintiff's UIM claim

precluded plaintiff from prevailing on her bad-faith claim, a separate trial on the UIM

claim might be appropriate.  In Pennsylvania, however, bad-faith and UIM claims are

separate and distinct, and a plaintiff could simultaneously prevail on a bad-faith claim

and lose on a UIM claim.  See, e.g., March v. Paradise Mut. Ins. Co., 646 A.2d 1254,

1256 (Pa. Super. Ct. 1994) (finding that "[a]s this Court has found that claims under

[the bad faith statute] are separate and distinct causes of action and as the language

of [that statute] does not indicate that success on the contract claim is a prerequisite

to success on the bad faith claim . . . the insured's claim for bad faith . . . is

independent of the underlying contract claim.'").  A trial on this matter would be

based on the same set of facts and use much of the same evidence.  Thus, a

bifurcated trial would be a waste of the court's time and resources.

Since the case will not be bifurcated, the defendant is at this time entitled to

discovery material which, like the claims files, seems reasonably calculated to lead

to relevant information for plaintiff's claims.  The most economical way of proceeding

with this case is to have all discovery collected at once.  Motions *in limine* and jury

instructions will serve to ensure that evidence is used for the proper purpose.  See,

e.g., Calestini v. Progressive Cas. Ins. Co., No. 09-cv-1679, 2009 US Dist. LEXIS

15

117138, * 2 (M.D. Pa. December 16, 2009) ("It simply does not matter what the extent of evidence may be in a civil action.  It is economical to reveal it all at once."). To the extent that defendant claims that the material plaintiff seeks is privileged, defendant may of course follow the procedures outlined above for adding items to the privilege log.  The same warnings about misuse of privilege claims and the purposes of discovery apply to this material as to material in the claims files.

**Conclusion**

For the reasons stated above, the court will grant plaintiff's discovery requests in part.  The court will order the defendant to provide the requested information.  The defendant may, however, object to some of the requests on the basis that the information is privileged.  Defendant must provide a privilege log that indicates to the plaintiff the nature of the material for which privilege is claimed and the reason for the claim.  Defendant may object to such designations and may request an *in camera* review of the documents for which privilege is claimed.  The court will conduct a review and determine whether discovery of the document is appropriate. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANA M. CONSUGAR, | : | No. 3:10cv2084 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| NATIONWIDE INSURANCE | : | |
| COMPANY OF AMERICA, | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 9th day of June 2011, the defendant is hereby

**ORDERED** to comply with the plaintiff's discovery requests, as follows:

1.  The defendant is hereby **ORDERED** to provide the plaintiff with the claims

file in this case, subject to defendant's redactions for claims of privilege.  To the

extent that defendant claims documents contained in the claims file are privileged,

the defendant is hereby **ORDERED** to provide plaintiff with a privilege log that

identifies the documents allegedly subject to privilege and the nature of the privilege

claim.  If the plaintiff disputes a designation of privilege, the parties are hereby

**ORDERED** to confer and discuss the dispute.  If the dispute cannot be resolved

between the parties, the plaintiff is hereby **ORDERED** to file an objection to the

designation with the court.  The court will then examine the document *in camera* and

determine whether the privilege designation is appropriate.  Designations of privilege

must be made in good faith, and the court will sanction parties who designate

17

documents as privileged without a good-faith basis for doing so;

2.  The defendant is hereby **ORDERED** to provide the plaintiff with the amount of reserve, if any, assigned to plaintiff's UIM claim.  To the extent that plaintiff seeks other documents related to the reserve established on plaintiff's file and defendant claims such documents are privileged, the parties are directed to follow the procedure described above for claims of privilege;

3.  The defendant is hereby **ORDERED** to provide plaintiff with the underwriting file pertaining to her case and all documents related to the underwriting of claims from 2009 to the present; and

4.  The defendant is hereby **ORDERED** to provide plaintiff with policy manuals, policy statements, or other documents regarding the processing of insurance claims for the years 2007 to present and any changes therein, and the specific manuals, educational materials, and written instructions used for the training of Nationwide's agents, adjusters, and other personnel involved in the processing of plaintiff's claim.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**